UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Nos. 3:22-CR-25-KAC-JEM |
| | ) | 2:15-cr-53-KAC-JEM |
| ROBERT W. BURCHFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter came before the Court on March 6, 2024, for a competency hearing. *See* 28 U.S.C. § 636(b). Assistant United States Attorney Miriam Johnson appeared on behalf of the Government. Attorney Michael B. Menefee appeared, representing Defendant Robert Burchfield, who was also present. After hearing the evidence and arguments presented by the parties, the undersigned finds that Defendant is legally competent to proceed.

**I.      EVIDENCE AND ARGUMENTS**

By an Order entered on October 5, 2023, the undersigned committed Defendant Burchfield for a mental evaluation of his competency to stand trial [Doc. 64][1]. Dr. Cynthia A. Low, Forensic Unit Psychologist at the Federal Detention Center in SeaTac, Washington ("FMC SeaTac"), conducted a thirty-day inpatient evaluation of Defendant's competency and prepared a sixteen-page forensic report dated January 18, 2024 [Doc. 69, SEALED]. At the motion hearing, the parties stipulated to the admissibility and authenticity of Dr. Low's forensic report. Based upon Dr. Low's examination and observation of Defendant and administration of cognitive, personality, and competency tests, she diagnosed Defendant with malingering and

---

[1]      Unless otherwise noted, all citations are to case number 3:22-CR-25.

three substance-use disorders. Dr. Low opined that Defendant does not suffer from a mental disease or defect that substantially impairs his ability to understand the proceedings or to assist counsel. AUSA Johnson stated that the Government relies on Dr. Low's report and had no other evidence for the Court's consideration. Mr. Menefee disagreed with Dr. Low's conclusions and presented the testimony of Defendant.

Defendant Burchfield testified in his own behalf. He acknowledged that in his meetings with Dr. Low, he initially "held back" information from her out of concerns for his safety because he believes the Masons, the Illuminati, and the CIA want to kill him. After their first meeting, he told Dr. Low about events occurring while he was on supervised release. Defendant stated that he is a drug addict but that he has not consumed illegal drugs since being incarcerated for his supervised release violations. He related that his life has been turned "upside down" because members of "secret societies" such as the Masons and the Illuminati want to assassinate him. He believes members of these societies are following him because he frequently sees the same vehicles bearing the symbols of these societies.

Defendant testified about events that occurred when his cousin drove him to Newport, Tennessee, to visit his mother for Mother's Day shortly after his release from custody.[2] Defendant stated that upon arriving in the vicinity of the residence, where he was supposed to meet his mother, he noticed that a Ford F150 truck with a license tag bearing two masonic symbols was following his cousin's vehicle. Defendant said he ran through the complex on foot to evade the truck and after the occupant of the apartment where he thought he was meeting his mother failed to admit him, he attempted to locate a convenience store to call his cousin.

---

[2] The original petition for violation of supervised release states that Defendant began serving a three-year term of supervised release on May 10, 2023 [Doc. 50 p. 1; *see also* Doc. 58, Sealed Amended Petition].

Defendant described noticing rental cars containing older people, individuals in military fatigues, and ultimately snipers and ninjas in trees, all of whom he believed were watching him. Defendant described first thinking that the United States was being invaded by another country and then, believing that he was being kidnapped by a drug cartel with whom his stepfather had dealings. Defendant said a woman with a badge addressed him, asked about his faith in God, and told him that "none of these people can hurt you."

Defendant acknowledged that he has used controlled substances, including methamphetamine, most of his life. Defendant stated that there is a difference between someone who is "faking crazy" and one who is "really crazy." He denied that he is "crazy," as is evident from his disciplined lifestyle which includes eating and showering.

Defendant next testified about traveling to Kingsport, Tennessee, in June or July, prior to his arrest on August 19, 2023. Defendant said that he left the hotel where was staying on foot because he heard that an individual staying across the hall had died. He said he became lost and felt he was being followed by helicopters. Defendant stated that he asked to use the telephone at a convenience store, and the employee knew his name and asked him to smoke a cigarette with her. Defendant said he asked to use the cellphone of a male customer, whom Defendant believed was a Navy Seal. Defendant stated that the man asked Defendant to follow him and led Defendant into the woods, where Defendant saw a spaceship that made a sound like a vacuum cleaner and had blue lights on the bottom. Defendant said he then ran to a residence, was admitted, and the occupants seemed to know him and offered him drugs. Defendant stated that he saw methamphetamine and a brick of cocaine on the banister. Defendant testified that upon seeing a man in military fatigues, whom he believed wanted to kill him, he fled the residence wearing socks but no shoes, stood in the middle of a highway, and attempted to flag down a car.

3

Defendant testified that the police subsequently came while he was sitting on a plastic container in the middle of the highway. He said at that point, he was ready to go to jail for his own safety after having absconded from supervision for two months. Defendant said he left in an ambulance, which he believed ascended into the air and then landed. Defendant asserted that he stayed overnight in the hospital and was given a bus ticket the next morning, but while waiting at the bus stop by the hospital, he noticed several cars with masonic and Illuminati symbols and again heard helicopters. Defendant said he became nervous and returned to the hospital waiting room, where a security guard allowed him to use a telephone. Defendant said he called his brother, who agreed to pick him up in a couple of hours. Defendant stated that while waiting on his brother, the hospital waiting room filled with older people driving vehicles with Virginia license tags and "Don't Tread on Me" signs.

When defense counsel questioned Defendant about his belief that the CIA was listening to their thoughts during attorney-client meetings, Defendant testified that the government has a mind-control program. Defendant said that he believes that God "runs everything," that the Masons work for God, and that he has met "undercover angels." Defendant said that it was difficult being "pressed" by the circumstances about which he testified immediately after being released from prison and characterized these circumstances as "entrapment." Defendant said the Illuminati "own" the jail in Oscilla, Georgia, where he was in custody and that four inmates, including his cellmate, are members of a secret society. Defendant stated that he has seen a human "shape-shift" into a cat and has seen three spaceships. He believed these observations portend something bad for the country and stated that he is ready to fight.

Defendant said he told the mental health evaluator that he needs help because he is seeing these things. He said he had no problem with being in a jail but that he needs to be where he can

4

get help. Defendant asserted that he believes the events to which he testified really happened to him.

On cross-examination, Defendant said he violated the conditions of his supervised release because he was being "harassed" and entrapped. He admitted that he had illegal drugs at the time of his car wreck on August 19, 2023. Defendant also admitted that he was "high" the night that he was walking alone in Kingsport in July.

Mr. Menefee argued that Defendant is not able to communicate rationally about his case because at attorney-client meetings, Defendant discusses the Illuminati, people following him, the government controlling his thoughts, and the other matters to which Defendant testified. He stated that Defendant's focus on these topics makes it impossible for Defendant to assist with his defense. Defense counsel asserted that Defendant shared these same accounts with Dr. Low and believes aliens and angels are real. Defense counsel maintained that although other people believe in aliens or angels, Defendant believes they are part of the facts of this case. He also called the Court's attention to an incident recounted in the forensic report when Defendant smeared feces on his cell, resulting in the jail calling the mobile crisis center. Defense counsel argued that Defendant is not competent because he is not able to participate meaningfully in his defense.

AUSA Johnson asked the Court to find that Defendant is competent to proceed. She argued that Defendant understood the questions being asked during his testimony and knew the dates of his release from custody and his arrest. She pointed out that Defendant admits he is a drug addict, that he initially lied to Dr. Low, and that he was high at the time he allegedly saw a spaceship. AUSA Johnson said the Government relies on Dr. Low's determination that

5

Case 2:15-cr-00053-KAC-JEM   Document 63   Filed 03/11/24   Page 5 of 9   PageID #: 446

Defendant is malingering and that he understands the nature and consequences of the proceedings.

The Court asked Mr. Menefee to relate without revealing client confidences how Defendant's ability to assist in his defense was impaired. Mr. Menefee said that Defendant's focus on the government listening to his thoughts and on his sincere belief in matters detailed in his testimony prevents counsel from providing effective assistance because he cannot rely on Defendant's account of what occurred. Upon inquiry, Mr. Menefee confirmed that he had no other evidence to present and that he was not seeking another mental evaluation for Defendant. The Court then took the matter of Defendant's competency under advisement.

## II. ANALYSIS

"The test for a defendant's competency to stand trial is 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him.'" *Mallett v. United States*, 334 F.3d 491, 494–95 (6th Cir. 2003) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "In making this determination, a court should consider evidence including that of 'irrational behavior, the defendant's demeanor [in court] and any prior medical opinion concerning competence to stand trial.'" *United States v. Taylor*, No. 23-5470, 2024 WL 966570, at *3 (6th Cir. Mar. 6, 2024) (quoting *United States v. Prigmore*, 15 F.4th 768, 776 (6th Cir. 2021)).

In her forensic report, Dr. Low opines that Defendant understands the charged violations of his supervised release, the roles of the participants in the proceedings, the value of potential witnesses, and the role of counsel [Doc. 69 pp. 14–15]. In her opinion, Defendant demonstrated the *ability* to assist counsel properly with his defense [*Id*. at 15]. She concluded based upon

testing and her interviews of Defendant that he is "feigning paranoid and psychotic delusions in an effort to be placed in a mental health facility rather than a correctional facility" [*Id*.].

Defendant's demeanor at the competency hearing supports a finding that he is competent. Defendant understood the questions put to him, gave detailed responses, and remembered specific dates and events. Defendant acknowledged the importance of testifying truthfully. Defendant's testimony was largely consistent with what Dr. Low reports that he related to her during the evaluation. In his testimony, Defendant acknowledged that he violated the conditions of his supervised release by absconding from supervision and admitted to taking illegal drugs. This testimony indicates a rational and factual understanding of the charges and proceedings.

Defendant contends that his fantastical account of events preceding his arrest reveals his incompetence, asserting it illustrates his inability to assist counsel with his defense. Yet, "the presence of a mental illness *alone* does not categorically mean that a defendant is mentally incompetent to stand trial." *Taylor*, 2024 WL 966570, at *3 (citation omitted); *see also United States v. Davis*, 93 F.3d 1286, 1290 ("[I]t does not follow that because a person is mentally ill he is incompetent to stand trial." (citation omitted)). Nor does the presence of "bizarre behavior" equate to legal incompetence. *Id*.; *see also Prigmore*, 15 F.4th at 776–77 ("Our caselaw is replete with instances of criminal defendants who exhibited bizarre behavior but who nonetheless met the Constitution's competency standard." (collecting cases)). That a criminal defendant subscribes to unusual beliefs also does not render him or her incompetent. *United States v. Coleman*, 871 F.3d 470, 476–78 (6th Cir. 2017) (holding that the defendant espousing "fringe" sovereign citizen beliefs did not require court to hold a competency hearing). "[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him." *United States v. Gooch*, 595 F. App'x 524, 527 (6th Cir.

7

2014) (citation omitted) (rejecting the defendants' contention that their sovereign citizen or tax protestor beliefs indicated their incompetence to stand trial). In other words, espousal of unique beliefs does not, "without more," indicate an inability to communicate with counsel. *Id*. at 528. Instead, the Court must determine whether the defendant is unable to communicate with counsel or has simply decided not to do so. *Id*.; *see also Coleman*, 871 F.3d at 478 (finding defendant, who espoused sovereign citizen beliefs, lacked the "desire" but not the "ability" to communicate with counsel).

Here, defense counsel related that he and Defendant had discussed the case, but during their discussions, Defendant would state that the government was listening to their thoughts or would relate the same events to which he testified. Defense counsel stated that he could not take Defendant's explanations as true. In Dr. Low's professional opinion, Defendant has the ability to assist counsel but is malingering. Her forensic report indicates that Defendant is choosing not to participate in his defense in a way that assists counsel. The Court gives Dr. Low's opinion weight. *See Taylor*, 2024 WL 966570, at *4 (finding the court "was entitled to give more weight to [the forensic psychologist's] opinion and report," after considering all the evidence including the testimony of defendant's family members and evidence from jail calls).

### III. CONCLUSION

Based upon the forensic report from Dr. Low and the testimony presented at the competency hearing, the Court finds by a preponderance of the evidence that Defendant Burchfield is competent in that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. 18 U.S.C. § 4241. Accordingly, the Court **ORDERS** as follows:

> (1) Defendant Robert Burchfield is **COMPETENT** to participate in further proceedings in this case; and

(2) the Court will contact the parties to schedule an initial appearance on the Amended Petition [Doc. 58, SEALED].

**IT IS SO ORDERED**.

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge